AUSA: FRANK BALSAMELLO

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **2 4 MAG   2 2 8 7** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE RIVERA and<br>JOMAR CRESPO,<br><br>Defendants. | **CORRECTED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 2119, 924(c), and 922(o)<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN MONTONI, being duly sworn, deposes and says that he is a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and New York City Police Department ("NYPD") Joint Firearms Task Force, and charges as follows:

## COUNT ONE
### (Carjacking)

1. On or about June 14, 2024, in the Southern District of New York and elsewhere, JOSE RIVERA and JOMAR CRESPO, the defendants, with the intent to cause death and serious bodily harm, took a motor vehicle that had been transported, shipped, and received in interstate and foreign commerce from the person and presence of another by force and violence and by intimidation, to wit, RIVERA and CRESPO brandished and pointed guns at another person (the "Victim") and stole the Victim's BMW 330xi (the "Car").

(Title 18, United States Code, Sections 2119 and 2.)

## COUNT TWO
### (Firearms Use, Carrying, and Possession)

2. On or about June 14, 2024, in the Southern District of New York and elsewhere, JOSE RIVERA and JOMAR CRESPO, the defendants, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the carjacking charged in Count One of this Complaint, knowingly used and carried firearms, and in furtherance of such crime, possessed firearms, and aided and abetted the use, carrying, and possession of firearms, which were brandished, including a machinegun that was capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii),
924(c)(1)(B)(ii), and 2.)

## COUNT THREE
**(Possession of a Machinegun)**

3.      On or about June 14, 2024, in the Southern District of New York and elsewhere, JOSE RIVERA and JOMAR CRESPO, the defendants, knowingly possessed a machinegun, in violation of Title 18, United States Code, Section 922(o)(1), and aided and abetted the same, to wit, RIVERA and CRESPO possessed and aided and abetted the possession of a Glock .40-caliber pistol equipped with a part designed and intended solely and exclusively, and a combination of parts designed and intended, for use in converting the weapon into a machinegun.

(Title 18, United States Code, Sections 922(o)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I have been employed by the NYPD for approximately fourteen years and served as a Detective for approximately seven years. For approximately the last nine months, I have been assigned as a TFO to the ATF/NYPD Joint Firearms Task Force. Together with other members of law enforcement, including detectives, task force officers, and special agents, I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement officers and other individuals, as well as my examination of reports and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and in part, except where otherwise indicated.

5.      On or about June 15, 2024, I interviewed the Victim, who is currently employed as a Sergeant with the NYPD, and the Victim reported the following, in substance and in part:

   a.   On June 14, 2024, at approximately 11:20 pm, the Victim was sitting inside his personal Car, which is a white BMW 330xi that the Victim had purchased from a dealership in New Jersey. The Car was parked in the vicinity of West 146th Street and Bradhurst Avenue in New York, New York.

   b.   Two men—later identified as JOSE RIVERA and JOMAR CRESPO, the defendants, as explained below—approached the Victim's Car from behind, one on the driver's side, and the other on the passenger's side. Both RIVERA and CRESPO wore black clothing and facemasks, and both brandished handguns at the Victim. Upon reaching the Car's front windows, the defendants knocked on the windows and ordered the Victim to get out of the Car. The Victim complied.

   c.   After the Victim got out of the Car, the defendant on the driver's side of the Car ordered the Victim to put the Car keys in the Car. When the Victim did not immediately comply, the defendant on the passenger side of the Car walked around to the driver's side, so both RIVERA and CRESPO were standing with the Victim. Although it was dark outside, there was a streetlight nearby, and the Victim was able to see that both RIVERA and CRESPO were brandishing semiautomatic handguns, which were black, large, and shaped in a way that caused

the Victim to initially believe they might be tasers.[1] The Victim then tossed the Car keys into the Car and fled. RIVERA and CRESPO got into the Car and drove away.

        d.     The Victim called 911, then went inside his apartment to find a document that reminded him of the Car's license plate number. When the Victim came back downstairs, police arrived and used the "Find My iPhone" application to try locating the Victim's iPhone, which he had left in the Car. Although the iPhone appeared to have been powered off, an iPad in the backseat of the Car began providing location, and police and the Victim tracked it until they found the Car in the vicinity of West 138th Street and Broadway.

    6.     From my review of security camera footage obtained from delis at the corner of West 138th Street and Broadway ("Store-1") and West 137th Street and Broadway ("Store-2"), respectively, I have learned the following, among other things:

        a.     After JOSE RIVERA and JOMAR CRESPO, the defendants, took the Victim's Car, they drove it to the vicinity of West 138th Street and Broadway, where they parked on the northwest corner and exited.

 

        b.     They then walked to Store-1 on the southwest corner, where they can be seen wearing all black, with RIVERA holding what appears to be a mask, and CRESPO apparently putting something in his pocket. Their physical appearances on the video also appear consistent with the appearances of RIVERA and CRESPO as captured in arrest photographs provided below.

---

[1] As discussed below, the firearms RIVERA and CRESPO pointed at the Victim were equipped with, among other things, flashlights mounted underneath the barrels, which would cause the fronts of the firearms to look larger and differently shaped than standard pistols.






**JOSE RIVERA**        **JOMAR CRESPO**

 

c. After RIVERA and CRESPO walked south off of the camera at Store-1, they entered Store-2, which is located one block south at West 137th Street and Broadway. Shortly thereafter, they exited Store-2, and their faces were captured on footage from Store-2's security system, provided below. Again, their appearances are consistent with RIVERA's and CRESPO's arrest photographs.

 

d. After leaving Store-2, RIVERA and CRESPO walked back up to the adjacent corner—which was the southwest corner of West 137th Street and Broadway—and turned

5

left from Broadway onto West 137th Street. Moments later, a marked NYPD SUV drove west on West 137th Street in the direction RIVERA and CRESPO just turned. After a few seconds, RIVERA and CRESPO came back to Broadway and begin sprinting south, away from the direction of the NYPD vehicle.





7. From my conversations with officers involved in the initial response to the Victim's call, the apprehensions of JOSE RIVERA and JOMAR CRESPO, the defendants, and the identification and collection of evidence—as well as from my review of arrest paperwork, property

invoices, body camera footage, and surveillance footage—I have learned the following, among other things:

        a.      Inside the Car, officers located rubber gloves, which I know from training and experience may be worn to prevent the wearer from leaving fingerprints, DNA, or other biological or forensic material at a crime scene or on objects touched during the commission of a crime. The Victim said, in substance and part, that the gloves were not his.

        b.      As RIVERA and CRESPO fled on foot, officers pursued them westbound on 135th Street. RIVERA, a few paces ahead of CRESPO, tossed a firearm ("Firearm-1") into a into a small fenced-in area in front of the vicinity of 617 West 135th Street, which a pursuing officer ("Officer-1") safeguarded until it was recovered. A few seconds later, CRESPO, veering into the street itself, tossed a firearm ("Firearm-2") beneath a parked car. Immediately after tossing Firearm-2, CRESPO was apprehended, at which time Firearm-2 was safeguarded and recovered.[2]

        c.      Upon arrest, RIVERA and CRESPO were found to be wearing clothing that matched the videos excerpted above, which are generally consistent with the Victim's description of their attire.

        d.      Upon inspection, Firearm-1 was determined to be a loaded Glock 27 .40-caliber pistol equipped with what appears to be a Glock automatic switch device (the "Glock Switch"), which, if operable, would cause Firearm-1 to automatically shoot more than one shot by a single function of trigger.[3] Firearm-2 was determined to be a loaded Glock 17 9-millimeter pistol with an extended magazine that could hold up to approximately 30 rounds of ammunition. Both Firearm-1 and Firearm-2 had flashlights mounted beneath their barrels. Photographs of Firearm-1 and Firearm-2 appear below.

---

[2] An earlier version of this Complaint described JOMAR CRESPO, the defendant, discarding Firearm-1 into a small fenced-in area in front of the vicinity of 617 West 135th Street. That description was based on an earlier conversation with one of the officers ("Officer-1") pursuing JOSE RIVERA and JOMAR CRESPO, the defendants. At the time of our conversation, Officer-1 had not observed the pertinent surveillance footage. Furthermore, Officer-1 was not involved in the arrest or identification of the defendants. Rather, upon seeing Firearm-1 be discarded, Officer-1 stopped his foot pursuit and safeguarded Firearm-1.

[3] The NYPD is in the process of testing the Glock Switch to confirm that it functions as designed. If it does, then I know from training, education, and experience that the Glock Switch alone meets the statutory definition of a "machinegun," as it is a "part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b).

7

**Firearm-1**                                              **Firearm-2**

  

   e.  Following their arrests, RIVERA and CRESPO were placed in separate interview rooms and advised of their *Miranda* rights. CRESPO voluntarily agreed to waive those rights, and he admitted that (i) he (CRESPO) and a friend had traveled to New York from Connecticut; (ii) he (CRESPO) and his friend saw a white BMW and decided to steal it, after which they approached the owner and told the owner to give up the vehicle; and (iii) he (CRESPO) possessed a firearm with a red band—identified in a photograph as Firearm-1—which he threw as he was running from police.[4]

---

[4] The interview of CRESPO was conducted entirely in Spanish, after which the interviewer summarized some of its contents including the admissions described herein.

8

WHEREFORE, I respectfully request that JOSE RIVERA and JOMAR CRESPO, the defendants, be imprisoned or bailed, as the case may be.

JOHN MONTONI
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 17th day of June, 2024.

THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

9